# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANITA K. CHILDERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-393-SPS |
| | ) |
| COMMISSIONER of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Anita K. Childers requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was fifty-six years old at the time of the most recent administrative hearing (Tr. 242). She has a high school equivalent education and has worked as a housekeeper/cleaner, trailer component assembler, and cage cashier (Tr. 38, 40, 53). The claimant alleges that she has been unable to work since December 16, 2012, due to headaches, neck surgery, pain and numbness in her shoulder and arm, and depression (Tr. 242, 262).

**Procedural History**

On May 17, 2013, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 242-43). Her application was denied. ALJ Truett M. Honeycutt conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated August 29, 2016 (Tr. 18-29).[2] The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined

---

[2] The ALJ conducted an initial administrative hearing on June 8, 2015 (Tr. 68-115). Due to a conflict with one of the medical experts at the initial hearing, a second hearing was conducted on May 9, 2016 (Tr. 34-67).

in 20 C.F.R. § 404.1567(b), *i. e.,* she could lift twenty pounds occasionally and ten pounds frequently; stand and walk two hours continuously for a total of six hours in an eight-hour workday; sit for two hours continuously for a total of two hours in an eight-hour workday; frequently balance, stoop, kneel, and crouch; and occasionally crawl, reach overhead bilaterally, and climb ladders, ropes, or scaffolds (Tr. 23). The ALJ then concluded that the claimant was not disabled because she could return to her past relevant work as a casino cage cashier as performed in the national economy (Tr. 27-28).

**Review**

The claimant contends that the ALJ erred by failing to properly: (i) account for her headaches, neck pain, torticollis, obesity, and mental impairments when formulating the RFC; (ii) provide a narrative discussion describing how the evidence supports the RFC; (iii) determine the mental demands of her past relevant work; and (iv) evaluate her subjective statements. The Court agrees that the ALJ failed to properly evaluate the claimant's nonsevere mental impairments, and the decision of the Commissioner must be reversed and the case remanded to the ALJ for further proceedings.

The ALJ found the claimant had the severe impairments of cervical disk disease status post remote fusion in 2002, class 1 obesity (body mass index of 32 at 63 inches tall and 183 pounds), and history of tension headaches, but that her depression and anxiety were nonsevere (Tr. 20-21). The relevant medical evidence reveals that the claimant established care at Caddo Family Medical Clinic on February 17, 2014 (Tr. 488-89). At this initial appointment, she reported severe headaches that occurred three or four times per week (Tr. 488). Nurse practitioner Emily Love diagnosed the claimant with tension

headache and prescribed medication (Tr. 488-89). The claimant presented to Dr. Lee on April 23, 2014, and reported consistent headaches, noting that she was keeping her three grandchildren and was under a lot of stress (Tr. 482-884). Dr. Lee diagnosed the claimant with tension headaches (Tr. 484). At a follow-up appointment with Dr. Lee on May 14, 2014, the claimant reported that she stopped taking her medication due to side effects and reported continued headaches a few times per week (Tr. 478-81). Dr. Lee diagnosed the claimant with generalized anxiety disorder and situational anxiety and prescribed an antidepressant (Tr. 480). After this initial diagnosis, the record contains no evidence of mental health treatment until June 2015. Dr. Lee treated the claimant for generalized anxiety disorder from June 2015 until August 2015 (Tr. 516-31). He observed the claimant was anxious and depressed in June 2015 and July 2015, but her mood was normal by August 2015 (Tr. 515, 519, 524, 529).

Nurse practitioner Tina Harrison treated the claimant's neck pain in April 2015 at Caddo Family Medical Clinic (Tr. 500-02). Ms. Harrison noted the claimant had normal range of motion of all muscle groups, but had some pain with range of motion (Tr. 501). At a follow-up appointment on September 24, 2015, the claimant reported that her headache pain radiated to her neck, and that no medication, including narcotic pain medication, fully alleviated her headache pain (Tr. 533).

Dr. Ardry Yarbrough treated the claimant's headaches and neck pain from November 2015 through at least February 2016 (Tr. 545-552). At a follow-up appointment with Dr. Yarbrough on November 23, 2015, the claimant reported increased stress and some depression secondary to her circumstances (Tr. 549). Dr. Yarbrough diagnosed the

claimant with dysthymic disorder and anxiety disorder not otherwise specified (Tr. 550). Thereafter, he continued treating the claimant's dysthymic disorder and anxiety disorder through at least February 2016 (546-49).

Dr. Robin McGirk performed a consultative psychological evaluation of the claimant on September 27, 2013 (Tr. 472-76). She found that the claimant's thought process was logical, organized, and coherent; her concentration, memory, and abstract reasoning ability were average; and her insight and judgment were average to low average (Tr. 474-75). Dr. McGirk diagnosed the claimant with depressive disorder not otherwise specified secondary to physical and medical problems, and indicated that the claimant's prognosis was good depending on improvement of her medical condition (Tr. 475-76).

State agency psychologists reviewed the record in October 2013 and January 2014, prior to much of the treatment record related to her mental impairments, and found the claimant's mental impairments were nonsevere (Tr. 121, 131-32).

In his written opinion, the ALJ summarized the claimant's testimony and some of the medical record. The ALJ summarized the notes from Dr. McGirk's consultative psychological examination at step two in the context of the severity of the claimant's depression and anxiety and then incorrectly determined that she had no psychological treatment records (Tr. 21). At step four, the ALJ gave the state agency psychologists' opinions considerable weight, but he did not otherwise mention or discuss the claimant's mental impairments or the mental health-related treatment provided by Dr. Lee and Dr. Yarbrough (Tr. 22).

The claimant contends, *inter alia,* that the ALJ failed to give proper consideration to her nonsevere mental impairments. Because the ALJ found that the claimant had other severe impairments, any failure to find her mental impairments severe at step two is considered harmless error because the ALJ is still required to consider the effects of these impairments at all steps of the sequential evaluation, and to account for them in formulating the claimant's RFC. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. But here the error was not harmless, because although the ALJ discussed all of the claimant's severe and nonsevere medically determinable impairments individually at step two, he failed to consider all of her impairments, singly *or* in combination, when formulating the claimant's RFC at step four. *See Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004). The Tenth Circuit has held that "a conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five." *Wells v Colvin*, 727 F.3d 1061, 1068-69 (10th Cir. 2013). "To sum up, to the extent the ALJ relied on his finding of non-severity as a substitute for adequate RFC analysis, the Commissioner's regulations demand a more thorough analysis." *Wells*, 727 F.3d at 1071.

This analysis was particularly important here because the state agency psychologists' opinion predated all of the claimant's mental health treatment, and because both Dr. McGirk and Dr. Yarbrough indicated that the claimant's mental health impairments were related to her physical impairments.

Because the ALJ failed to properly account for *all* the claimant's impairments at step four, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 11th day of March, 2019.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**